UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 06-CV-5716 (JFB)(ARL)

JOHN MANGINO

Plaintiff,

VERSUS

INCORPORATED VILLAGE OF PATCHOGUE & FIRE MARSHALL JOHN P. POULOS,

Defendants.

**MEMORANDUM AND ORDER**
August 1, 2014

JOSEPH F. BIANCO, District Judge:

Plaintiff John Mangino ("Mangino" or "plaintiff") brought this 42 U.S.C. § 1983 action against defendants Incorporated Village of Patchogue ("the Village" or "Patchogue") and Fire Marshall John P. Poulos ("Poulos") (collectively, "defendants"), alleging violations of his rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution.[1] A jury trial on the Fourth Amendment claim took place from February 24, 2014, through March 10, 2014. The jury returned a unanimous verdict for defendants, concluding that plaintiff did not prove, by a preponderance of the evidence, that Poulos fabricated an exigent circumstance and thus lacked probable cause to enter Mangino's rental property at 21 Church Street in Patchogue on July 25, 2005, without a warrant.

Presently before the Court is plaintiff's timely motion pursuant to Federal Rule of Civil Procedure 59(a) to set aside the verdict and for a new trial. Plaintiff raises two grounds for relief: (1) the verdict was against the weight of the evidence, which established that Dawn Gucciardo ("Gucciardo"), a tenant, did not call the Village to complain about an arcing or sparking wire in her apartment on July 25, 2005; and (2) the charge to the jury improperly allowed the jury to consider matters from July 22, other matters outside of the events of July 25, or both, as a justification for the warrantless entry. For the following reasons, the Court denies plaintiff's motion to set aside the verdict and for a new trial in its entirety. In particular, defendants presented more than sufficient evidence—including, *inter alia*, the testimony of three separate witnesses—from

---

[1] This litigation originally included another plaintiff, Elaine Mangino, and several other defendants. The instant motion does not address the dismissal of those parties or the earlier dispositions of the First and Fourteenth Amendment claims. The caption above is identical to that on the jury verdict sheet.

which the jury could rationally find that Gucciardo reported a sparking outlet on July 25, 2005, and there is absolutely no basis to conclude that the jury's verdict was egregious, seriously erroneous, or a miscarriage of justice. Moreover, with respect to the claim regarding the Court's jury instruction, plaintiff's argument that the jury may have improperly considered matters from before July 25 as a justification for Poulos's warrantless entry is utterly devoid of any merit. It was abundantly clear from the arguments of counsel and the Court's instruction on the law that the legal issue the jury needed to decide was whether Poulos fabricated an exigent circumstance in order to create probable cause to gain entry to plaintiff's property on July 25, 2005. That was only further confirmed by the explicit question on the verdict sheet, which asked: "Did the plaintiff prove, by a preponderance of the evidence, that the defendant John Poulos fabricated an exigent circumstance and thus lacked probable cause to enter the property at 21 Church Street on July 25, 2005, without a warrant?" (Verdict Sheet, Docket No. 161.) The jury's answer to that question was, "No," and, thus, it was not required to consider any other questions. Neither the Court's instruction nor the verdict sheet even allowed for consideration of the existence of an exigency prior to July 25, 2005; rather, the instruction and question on the verdict sheet only focused on whether a fabricated exigency occurred on July 25. In short, having presided over the trial, the Court concludes that the verdict was not against the weight of the evidence, and there simply is no possibility that the jury's verdict was erroneously based upon considerations of whether probable cause was established by events prior to July 25.

I. PROCEDURAL BACKGROUND[2]

Plaintiff filed his complaint on October 23, 2006, an amended complaint on January 17, 2007, and a second amended complaint on February 14, 2008. Defendants answered the latter on March 17, 2008. Defendants moved for summary judgment on January 19, 2010. That motion was granted in part and denied in part on September 23, 2010. 736 F. Supp. 2d 205 (E.D.N.Y. 2010). Defendants moved for reconsideration on October 7, 2010. That motion was granted in part and denied in part on September 30, 2011. 814 F. Supp. 2d 242 (E.D.N.Y. 2011).

From February 24 through March 10, 2014, this Court held a jury trial on the Fourth Amendment claim. The jury found in favor of defendants, finding that Poulos did not fabricate an exigent circumstance in order to enter Mangino's property. Plaintiff timely moved to set aside the verdict and for a new trial pursuant to Federal Rule of Civil Procedure 59(a) on April 7, 2014. Plaintiff filed a corrected memorandum of law on April 8, 2014. Defendants opposed on May 5, 2014. Plaintiff replied on June 2, 2014, and filed a corrected brief on June 5, 2014. The matter is fully submitted.

II. STANDARD OF REVIEW

A court may grant a new trial in a jury case for any of the reasons "for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). The decision whether to grant a new trial under Rule 59 "is 'committed to the sound discretion of the trial judge.'" *Stoma v. Miller Marine Servs., Inc.*, 271 F. Supp. 2d 429, 431 (E.D.N.Y. 2003) (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992)). Thus, "[a] new trial

---

[2] The Court has not included a general factual background section, but rather analyzes the relevant facts within the discussion section *infra*.

2

may be granted [ ] when the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998).

In contrast to a motion for judgment as a matter of law, a court may grant a motion for a new trial "even if there is substantial evidence supporting the jury's verdict." *Id.* at 134. Additionally, "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *Id.* (citing *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)). A court considering a Rule 59 motion for a new trial, however, "must bear in mind [ ] that the court should only grant such a motion when the jury's verdict is 'egregious.'" *Id.* For this reason, "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (quoting *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir. 1998)); *see also Patrolmen's Benevolent Ass'n of N.Y.C. v. City of New York*, 310 F.3d 43, 54 (2d Cir. 2002). Furthermore, "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Fugazy*, 983 F.2d at 363; *see also DLC Mgmt. Corp.*, 163 F.3d at 134 ("[A] court should rarely disturb a jury's evaluation of a witness's credibility.").

III. DISCUSSION

According to plaintiff, the verdict should be set aside and a new trial held for two reasons: (1) the verdict was against the weight of the evidence; and (2) the jury charge did not focus the jury on whether Poulos fabricated Gucciardo's purported July 25 complaint about an arcing or sparking wire, and instead permitted the jury to consider whether exigent circumstances existed based on other conditions in the apartment. The Court addresses each argument in turn and, for the reasons set forth below, denies the requested relief.

A. Whether the Verdict Was Against the Weight of the Evidence

Plaintiff first argues that the verdict was against the weight of the evidence because the testimonial and documentary evidence established that any problematic conditions in the premises were addressed before July 25 and that Gucciardo never complained that morning. Specifically, according to plaintiff, "an objective view of the inconsistencies in testimony between witnesses, the conduct engaged in by each upon allegedly receiving [Gucciardo's] call, and, the objective evidence (circumstantial and otherwise), significantly belies the naked testimony of [the] interested witnesses" because: (1) Joanne Gallo and Carol Giglio are interested witnesses who worked for the Village, and there are discrepancies between their testimony as to when Poulos arrived at work; (2) Poulos then waited over fifty minutes after arriving at the premises before calling the Patchogue Fire Department, as evidenced by the telephone records and a video recording, making his testimony about when he arrived "incredulous"; (3) there is no record of Elinor Kolb's and Gucciardo's alleged July 25 complaints, despite defendants' claim that they record all complaints and calls; (4) Gallo and Giglio did not call the Fire Department or notify Poulos immediately about the sparking wires; (5) there is no evidence that the Fire Department ever found a sparking outlet or other imminent danger; and (6) Gucciardo claims she did not call anyone on July 25. (Pl. Mem., at 5–8.) Defendants counter that there was ample evidence from which the

3

jury rationally could conclude that Gucciardo reported a sparking outlet on July 25, including (1) Gallo's testimony (corroborated by Giglio) that Gucciardo called; (2) the evidence that Poulos did not work on July 21 or July 22, supporting a rational inference that the call came on July 25; (3) Gallo's and Giglio's testimony that they did not document the complaint because Mondays were hectic; (4) Poulos's testimony that he would never report a false alarm; (5) plaintiff's failure to proffer probative evidence that Poulos had any motive to call in a false alarm; (6) testimony that Poulos arrived minutes after he called plaintiff about the complaint and that he and plaintiff discussed the situation for about thirty minutes; (7) evidence that hazardous conditions, including a sparking outlet, existed on July 25, supporting a rational inference that Gucciardo reported the outlet even though she denied doing so; and (8) Gucciardo's testimony, although the parties questioned her credibility. (Opp'n, at 3–6.)

The foregoing summary, which highlights the diverging facts presented to the jury, shows that, to set aside the verdict, this Court would need to find that the jury improperly disregarded plaintiff's and Gucciardo's testimony, improperly interpreted the telephone records,[3] improperly disregarded testimony that the Fire Department found no sparking wires, and improperly credited Poulos's, Gallo's, and Giglio's testimony. That there was some testimony and some documentary evidence to corroborate plaintiff's version, however, does not change the analysis. As the Supreme Court has explained,

> It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.

*Tennant v. Peoria & P.U.R. Co.*, 321 U.S. 29, 35 (1944); *see also Elyse v. Bridgeside Inc.*, 367 F. App'x 266, 268 (2d Cir. 2010) ("The district court is authorized to grant a new trial based on the weight of the evidence only if it determines that the jury's verdict was 'seriously erroneous,' or 'a miscarriage of justice.' In making its determination, however, the court must refrain from invading the province of the jury to evaluate the credibility of the witnesses." (internal citation omitted)); *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 875 (2d Cir. 1992) (reversing district court's order granting new trial on grounds that "the trial court overstepped its bounds and usurped the jury's function of judging credibility"). In short, the re-weighing of the credibility of testimony is not the Court's function, and the Court declines to find that defendants' witnesses were so lacking credibility as witnesses that a new trial is warranted. *See Sorlucco*, 971 F.2d at 875 ("[The jurors] were free to settle upon which witness they believed."). Their recollection of July 25, including why Gallo and Giglio did not record the complaints and when Poulos went to the premises, is not "incredulous." Moreover, it is not this Court's duty to speculate as to which portions of the testimony the jury credited.

---

[3] The surveillance recording was not presented to the jury, because plaintiff only had portions of the video. (*See* Tr. 576 (refusing to admit video into evidence).) Therefore, plaintiff cannot rely on the video to support his weight of the evidence challenge. In any event, there was nothing on the video that confirmed whether or not a call for a sparking outlet was made on July 25. In short, the video would have had no impact on the jury's verdict.

4

Furthermore, the weight of the evidence supports the jury's conclusion. For instance, Gallo testified that Gucciardo called on July 25 to report a sparking outlet in her apartment, and Giglio testified that she overhead this conversation and that Gallo apprised Poulos of the complaint. (*See* Tr. 90–94, 100–01, 150–52, 154, 187–88, 284–88, 331–34, 342, 350, 353–57.) Poulos, meanwhile, was adamant that he would never report a false alarm (*id.* at 153–54, 156–59), and there was testimony that he arrived a few minutes after he called plaintiff about the complaint and that they discussed the situation for a while thereafter (*id.* at 108–15, 189, 711–13, 791–94). In addition, Gucciardo claimed there was a sparking outlet and that she complained to the Village on July 21. Plaintiff, meanwhile, testified that Gucciardo apologized to him on July 25 and that he blamed her for the events of that day. (*Id.* at 858.) Given this testimony and the other evidence of the hazardous conditions in the apartment both before and after July 25, the Court finds that extensive evidence supports the jury's conclusion that Gucciardo reported a sparking outlet on July 25, even though she denied doing so, and, thus, that Poulos did not fabricate the complaint in order to enter the premises. (*See id.* at 192–94, 225–27, 300–06, 502–15, 537–46, 562, 774–89.)

In sum, it was the province of the jury to resolve the conflicting evidence and determine what reasonable inferences should be drawn therefrom, and consider the parties' arguments. "Where the jury resolved conflicting versions of events in favor of one party, a new trial is appropriate only where one 'conflicting account is so inherently implausible as to tax credulity, or there is independent evidence in the trial record' such that finding for one party, instead of another, would 'lead to a miscarriage of justice.'" *FinnVerburg v. N.Y. State Dep't of Labor*, 165 F. Supp. 2d 223, 228 (N.D.N.Y. 2001) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 70 F. Supp. 2d 300, 308 (S.D.N.Y. 1999)). That is not the case here. Accordingly, having carefully considered plaintiff's arguments in light of the trial record, the Court concludes that the jury's verdict was not against the weight of the evidence, and, thus, a new trial is not warranted on this ground. The Court does not conclude that the jury returned a seriously erroneous result or that the verdict is a miscarriage of justice.

B.   Sufficiency of the Jury Charge

Plaintiff contends that the jury charge improperly permitted the jury to consider matters from before July 25 as a justification for Poulos's warrantless entry, irrespective of whether Poulos fabricated Gucciardo's telephone call or not. In the instant case, no new trial is warranted because the Court's instruction was not erroneous.

Grounds for granting a new trial include non-harmless errors in jury instructions, *United States v. Kozeny*, 667 F.3d 122, 130 (2d Cir. 2011), and verdict sheets, *Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 136 (2d Cir. 2005). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (internal quotation marks omitted); *see also Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013). An erroneous jury instruction requires a new trial, unless the error is harmless. *Rasanen v. Doe*, 723 F.3d 325, 331–32 (2d Cir. 2013). An error is harmless only if the court is convinced that the error did not influence the jury's verdict. *Patalano v. Am. President Lines*, 250 F. App'x 425, 427 (2d Cir. 2007) (citation omitted). Jury instructions are not erroneous if "taken as a whole and viewed in

light of the evidence, [the charge] show[s] no tendency to confuse or mislead the jury as to principles of law which are applicable." *Hathaway v. Coughlin*, 99 F.3d 550, 552–53 (2d Cir. 1996); *see Patalano*, 250 F. App'x at 428 (explaining that, because "a trial court has considerable discretion in the formulation and style of jury instructions," "'a new trial is only warranted if, taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law'" (quoting *Plagianos v. Am. Airlines*, 912 F.2d 57, 59 (2d Cir. 1990))). "[T]he particular words used in a jury instruction may (depending on the circumstances) be less important than the meaning or substance of the charge as a whole." *Owen v. Thermatool Corp.*, 155 F.3d 137, 139 n.1 (2d Cir. 1998).

Plaintiff argues that, although the Court recognized that the issue was whether Poulos fabricated the July 25 complaint, the Court erred by not explicitly instructing the jury to determine whether Poulos fabricated Gucciardo's call, and the Court's explanation of exigent circumstances and probable cause "permit[ted] and even invite[d] the jurors to consider the various conditions which may have been considered dangerous as a justification for defendant Poulos to enter on the 25th irrespective of whether there was or was not a fabricated call." (Pl. Mem., at 11.) Defendants counter that (1) plaintiff did not object to the probable cause and exigent circumstances instructions and agreed that a sparking wire was an exigent circumstance, (2) the charge stated that defendants claimed the Village received a complaint about a sparking wire on July 25, (3) there was no evidence the earlier complaints were fabricated, and (4) defendants never argued the entry was justified based on exigent circumstances that may have existed before July 25. (Opp'n, at 8–10.)

As an initial matter, plaintiff never specifically objected to the exigent circumstances and probable cause language in the charge, although he requested that "the Court could consider instructing the jury that any exigency would have necessarily been derived from a call on [the] morning" of July 25. (Tr. at 1139–40.) Thus, any objection to the general exigent circumstances and probable cause language "should be entertained only if the alleged errors are 'fundamental.'" *Shade v. Hous. Auth. of the City of New Haven*, 251 F.3d 307, 312 (2d Cir. 2001) (citing *Frederic P. Wiedersum Assoc. v. Nat'l Home Constr. Corp.*, 540 F.2d 62, 66 (2d Cir. 1976)); *see Beyar v. City of New York*, No. 04-CV-3765 (JFB)(KAM), 2007 WL 1959010, at *5 (E.D.N.Y. June 29, 2007); Fed. R. Civ. P. 51(d). Putting that aside, however, and focusing on the merits of the objection, the Court's instruction clearly framed the parties' dispute for the jury—whether Poulos fabricated the existence of the complaint about an arcing or sparking wire on July 25 to unlawfully gain entry to the residence.

In detailing the dispute, the Court instructed the jury:

> [T]he plaintiff alleges that Mr. Poulos fabricated an exigent circumstance to unlawfully gain access to the property through the Patchogue Fire Department because he wanted to look for code violations, and that fabricated exigency led to a search of Mr. Mangino's private room. . . . The defendants dispute these allegations and contend, among other things, that exigent circumstances justified Mr. Poulos's lawful entry into the property on July 25, 2005. In particular, the defendants maintain that the Village received a telephone

> call from a tenant complaining about an arcing or sparking wire in an apartment, which justified entry into the house without a warrant to ensure the safety of the tenants.

(Jury Charge, at 16.) This unambiguously informed the jury that the parties disputed whether Gucciardo complained about an arcing or sparking wire in her apartment. The Court later instructed the jury that "[a]n arcing or sparking wire in a multi-family dwelling is an exigent circumstance that would allow entry into the dwelling without a warrant." (*Id.* at 20.) In addition, the Court instructed the jury that "the plaintiff contends that Mr. Poulos unreasonably entered the property based on a fabricated complaint. Mr. Poulos contends that his actions were justified by a tenant complaint of exigent circumstances." (*Id.* at 20.)

As plaintiff concedes, the Court recognized that, if the charge drew the jury "away from the immediacy of that day, it's a multi-factor thing they would have to satisfy." (Tr. 1115.) If that were the case, it would have been unnecessary to instruct the jury that an arcing or sparking wire is an exigent circumstance as a matter of law. (*See id.* at 1114–15.) Consequently, the charge, as written, did not suggest that the exigent circumstance at issue could be anything other than the arcing or sparking wire—that is, any conditions in the apartment before July 25. The verdict sheet reflects this fact; it asked the jury to determine whether Poulos fabricated an exigent circumstance and, if so, whether that fabricated exigency caused Fire Department personnel to search plaintiff's locked room in the basement. (*See* Verdict Sheet, at 1.) Thus, neither the charge nor the verdict sheet suggested that Poulos could not be liable even if he fabricated the July 25 complaint if the conditions in the apartment before July 25 created an independent exigent circumstance. In short, "the meaning or substance of the charge as a whole" eliminated any potential confusion.[4] *Stowe*, 793 F. Supp. 2d at 559.

Plaintiff's remaining contentions, which primarily focus on defense counsel's closing argument rather than the charge itself, also are unavailing. Any statements during the charge conference are irrelevant because defense counsel ultimately agreed to frame the exigency inquiry narrowly, and the jury was unaware of those discussions. (*See* Tr. 1081–84.) In addition, although plaintiff insists that defense counsel's closing argument muddled the analysis (*see* Reply, at 8–10), a review of the record demonstrates that defense counsel did not argue that any events or conditions before July 25 justified the entry.[5] (*See* Tr. 1212–40.) For instance, he stated:

> [I]n order for you to believe that John Poulos did something wrong, you have to believe, A, that Joanne Gallo did not tell John Poulos that Dawn Gucciardo called. There is no dispute, they have no evidence on the other side that Ms. Gallo told Poulos, *I got a call about a sparking outlet*. So for you to believe that

---

[4] As the Court noted, there was no evidence that the Village received a complaint about a sparking or arcing wire before July 25. (Tr. 1141.) The earlier complaints and apartment conditions are background the jury could have used to evaluate disputed facts and assess witness credibility. The introduction of those facts into evidence by both parties, however, does not compel the conclusion that the charge was erroneous.

[5] Although lawyers' arguments are not evidence (*accord* Reply, at 8), that does not compel the conclusion that the jury disregarded counsel's framing of the dispute between the parties. Evidence and argument are distinct concepts. In addition, plaintiff's theory of the case, as presented to the jury, was that defendants invented the complaint. (*See* Tr. 240–41, 1170, 1191–1200, 1209–10, 1242–43.)

7

Poulos made something up, you first have to believe that Gallo made it up when she told you she told him that. See, it's not, this case is not really about whether Dawn called. I'll say it again. It's not a case about whether Dawn called. It's about whether Joanne Gallo told Poulos that she called him. You also have to believe that Carol Giglio did not overhear the call. And you have to believe that Carol Giglio not only didn't overhear the call, but she also didn't hear Joanne Gallo tell Poulos about it. They're not suing Gallo. They're not suing Giglio. They're suing Poulos. And what is the evidence that Joanne Gallo on July 25th did not tell Poulos that? There is no evidence that that didn't happen.

(*Id.* at 1219–20 (paragraph breaks omitted) (emphasis added).) This language focused on a fabrication on July 25, not on pre-existing conditions. Counsel also focused on Gucciardo's testimony that she had an outlet that sparked regularly (*id.* at 1220–21) and Poulos's previous visits to the premises (*id.* at 1225) to argue that Gucciardo likely did complain of a sparking outlet on July 25 and to explain why Poulos would not have deferred to plaintiff's refusal to allow entry. Counsel also highlighted that Gucciardo did not testify that she told the Fire Department that she did not complain that morning. (*Id.* at 1227). He concluded by asking the jury, "You think that somebody who went through that serious experience would call in a phony false alarm and put other people, other first responders in danger?" (*Id.* at 1239.) Such statements belie any contention that defense counsel exploited the jury charge to expand the jury's focus from the events of July 25.

Finally, the Court notes that the jury asked no questions during their deliberations about the charge or the scope of the exigent circumstances analysis. The Court cannot conclude, simply from the lack of questions, that the jury misunderstood the law or the relevant inquiry. The more reasonable inference drawn from the lack of questions and the jury's verdict is that they jury *did* comprehend the instructions and was not confused. *See Beyar*, 2007 WL 1959010, at *5 (concluding that plaintiff could not claim that a fundamental error occurred in the charge simply because it may have been complex and misunderstood, particularly where counsel did not raise that objection and the jury asked no questions about the charge during their deliberations).

Therefore, in sum, the Court finds that the language of the charge did not mislead the jury as to the correct legal standard or inadequately inform the jury on the law, or incorrectly present the issues to the jury. Even assuming *arguendo* that there was any ambiguity, that ambiguity was harmless in light of the balance of the charge and the presentation of the issues to the jury throughout the trial. Accordingly, the Court declines to set aside the verdict and order a new trial on the grounds that the jury charge was erroneous.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that plaintiff has failed to set forth any grounds that warrant the setting aside of the verdict and a new trial. Accordingly, the Court denies plaintiff's motion pursuant to Federal Rule of Civil Procedure 59.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 1, 2014
Central Islip, NY

\*\*\*

Plaintiff is represented by Robert A. Siegel, 205 East 60th Street, New York, NY 10022. Defendants are represented by Brian S. Sokoloff and Mark A. Radi of Sokoloff Stern LLP, 179 Westbury Avenue, Carle Place, NY 11514.